UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RTM CAPTIAL PARTNERS, INC., LPV, 15- HERMITAGE, LLC, and MATTHEW CURTIS, <br><br> Plaintiffs <br><br> v. <br><br> JAMES R. BARNES, <br><br> Defendant | CASE NO. 18-00076 (RNC) |

**MEMORANDUM OF LAW OF BARNSTORMER SUMMIT LIFT, LLC
IN SUPPORT OF ITS MOTION TO INTEVENE, COMPEL ARIBITRATION,
AND LIMIT THE SCOPE OF THE PROCEEDING**

Now comes Barnstormer Summit Lift, LLC, through its counsel, Zeisler & Zeisler, P.C., and files this Memorandum of Law in Support of its Motion to Intervene, Compel Arbitration, and Limit the Scope of the Proceeding, and states as follows:

**Introductory Statement on Relief Requested**

Barnstormer Summit Lift, LLC ("Barnstormer LLC") seeks intervention as a matter of right under F.R.C.P. 24(a). If Barnstormer LLC's request for intervention is granted and the Court joins it as a necessary party under F.R.C.P. 19(a), diversity will be destroyed and the entire case will need to be dismissed. However, F.R.C.P. 19(b) permits this Court to be flexible when presented with a situation where joining a necessary party would defeat subject-matter jurisdiction. The portion of the case that directly involves Barnstormer LLC is a determination of the amount of funds available to creditors from the distributive interest of Defendant in Barnstormer, LLC. That dispute is subject to mandatory mediation and arbitration pursuant to

1

the Barnstormer LLC Operating Agreement. Accordingly, Barnstormer LLC requests that this Court order the enforcement of the arbitration provision, thereby limiting the remedies available to Plaintiffs while permitting the remainder of the current proceeding to continue and avoiding dismissal. The Court would retain jurisdiction over the issue of the relative priorities of the two charging orders. Barnstormer LLC will stipulate that it will pay over funds available from Defendant James Barnes's determined distributional interest to the appropriate charging order creditor(s) once that amount (if any) is agreed to at mediation or ordered by the arbitrator. An order enforcing those mediation and arbitration provisions will allow the Court to enter an order consistent with F.R.C.P. 19(b) permitting the remainder of the current proceeding to continue.

## Background

Plaintiffs initially filed their action against Defendant in the United States District Court for the District of Vermont (Doc. No. 5:18-cv-56) and obtained a default judgment. Plaintiffs then registered their judgment with this Court (Doc. #1) on July 23, 2018. Plaintiffs initially obtained a charging order against Defendant's interest in Barnstormer LLC in Vermont District Court (Doc. # 10-2) and then in this Court (Doc. # 11).

Daniel Solaz also obtained a charging order against Defendant's interest in Barnstormer LLC as a result of a default judgment (Doc. # 10-5).

In their *Motion for Order to Show Cause re: Enforcement of Charging Order* (Doc. # 10), Plaintiffs request an order from the Court "(1) ordering Barnstormer [LLC] to pay all amounts owed to the Defendant; and (2) determining the priorities to those funds between Plaintiffs and Solaz." Doc #10, p. 2.

Barnstormer LLC is a manager-managed Connecticut limited liability company with individual members who are residents of New Jersey, Connecticut, Massachusetts, and New

York.  In addition, Hermitage Inn Real Estate Holding Company, LLC ("HIRECO"), a Connecticut limited liability company, is also a member.  HIREHCO has at all times been controlled (if not owned entirely) by Defendant James Barnes.

Plaintiffs have stated that they are all residents of New Jersey.

Barnstormer LLC has only ever had one asset, a promissory note from HIREHCO secured by a lien on a Dopplemayr chair lift (the "Lift") purchased by HIREHCO and installed on real estate owned by HIREHCO.  Although HIREHCO was the borrower on the promissory note, HIREHCO was also named as the sole manager of Barnstormer LLC with plenary management rights.

Defendant James Barnes solicited investments in Barnstormer LLC from members of The Hermitage Club, a private ski and golf resort founded by the Defendant and owned by HIREHCO.  Members of The Hermitage Club were not members of HIREHCO nor did they own any equity interest in any entity as a result of their memberships.  Some of The Hermitage Club members invested cash and became members in Barnstormer LLC.  After all cash investors in Barnstormer LLC had made their investments, Defendant, acting through HIREHCO, amended the Barnstormer LLC operating agreement and thereafter indicated that he had a $2,000,000.00 capital account in Barnstormer LLC.

All financial information and reporting for Barnstormer LLC (through February, 2019) was handled by its manager, HIREHCO, which was controlled exclusively by the Defendant.

HIREHCO defaulted on its obligations under the promissory note due Barnstormer LLC. Paragraph 5.1.(b) of the Barnstormer LLC Operating Agreement (copy without signature pages other than Defendant's signature attached as <u>Exhibit 1</u>) allows the members to require the manager (then HIREHCO) to accelerate the promissory note after default if HIRECO (as

manager of Barnstormer LLC) has not done so. Despite proper votes by the members and repeated requests, HIREHCO refused to accelerate the note. In November, 2018, members of Barnstormer LLC filed an action in Connecticut Superior Court (*see* Doc. # 10-7) that ultimately resulted in a settlement (in early 2019) that removed HIREHCO as the manager of Barnstormer LLC. The settlement also required HIREHCO and Defendant to turn over certain financial records, including but not limited to "membership in Barnstormer [LLC], including information concerning the capitalization of Barnstormer and the addition and/or subtraction of members over time and the circumstances leading to those additions/subtractions."

Those financial records were not turned over by HIREHCO or Defendant, in part because of the intervening bankruptcy of HIREHCO. Eventually, in late 2019 and early 2020, after requests to the Chapter 7 Trustee for HIRECO (and after obtaining the necessary consent of Berkshire Bank as to certain bank account records), financial records were provided to counsel for Barnstormer LLC. This turnover coincided with the sale of the Lift through a stalking horse bidding process presided over by the Vermont Bankruptcy Court.

When the financial records were examined, it became obvious that Defendant had made no cash contribution to Barnstormer LLC and there was no documentation supporting any consideration for the alleged $2,000,000.00 capital account. Accordingly, the current managers of Barnstormer have determined that there is a dispute as to whether Defendant has a positive capital account.

The Barnstormer LLC Operating Agreement provides that on dissolution funds are to be distributed based on members' positive capital accounts. Exhibit 1, paragraph 11.3. The Operating Agreement also provides that any unresolved dispute is subject to mandatory mediation and, if not resolved, mandatory arbitration. Exhibit 1, paragraphs 12.1.N and 12.1.O.

As neither Plaintiffs nor Mr. Solaz are members of Barnstormer LLC, neither is contractually bound by the mandatory mediation and arbitration provisions of the Operating Agreement. In addition, the issue of which charging creditor has priority is not a "dispute" related to the Barnstormer LLC Operating Agreement and therefore would not be subject to an order to compel enforcement of the arbitration clause.

Vermont counsel for Barnstormer LLC has advised counsel for Plaintiffs and counsel for Mr. Solaz of these provisions and provided them with copies of financial information provided to him by the HIREHCO Chapter 7 Trustee. Given that both charging orders were the result of default judgments, and that the sum of the two charging orders well exceeds any distributions that could be made to Defendant under any theory,[1] counsel for Barnstormer LLC has advised counsel for Plaintiffs and counsel for Mr. Solaz of the mandatory mediation/arbitration provisions and invited both of them to participate as the true parties in interest to any funds that could be distributed to Defendant.

Barnstormer LLC is willing to stipulate that once an agreement or order establishes the amount of any distributional interest for Defendant, Barnstormer LLC will promptly pay such distributional interest to the appropriate charging order creditor(s).

I. **Barnstormer LLC is Entitled to Intervene as Matter of Right.**

Rule 24(a)(2) of the Rules of Federal Civil Procedure provides:

(a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
>     *   *   *
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

---

[1] In fact, the sum of the two charging orders exceeds the gross proceeds received by Barnstormer LLC for the Lift.

In determining whether to grant a motion to intervene of right under F.R.C.P. 24(a)(2), the factors a court should consider include "(1) whether the application is timely filed, (2) whether the party seeking intervention shows an interest in the action, (3) whether that party demonstrates that the interest may be impaired by the disposition of the action, and (4) whether that party has shown that the interest is not protected adequately by the existing parties to the action." *R Best Produce, Inc. v. Shulman–Rabin Mktg. Corp.,* 467 F.3d 238, 240 (2d Cir. 2006), *quoting In re Bank of N.Y. Derivative Litig.,* 320 F.3d 291, 300 (2d Cir. 2003). A party seeking intervention must satisfy each of these requirements. *Harris-Clemons v. Charity Acquisitions, Ltd.,* 642 Fed. Appx. 17, 21 (2d Cir. 2016).

Barnstormer LLC's request to intervene meets each of the four requirements. The request for relief and show cause order have only recently been issued, and Barnstormer LLC has filed this Motion before the deadline for responses to the show cause order are due. Barnstormer LLC did not receive financial records until recently, and its counsel has been in contact with counsel for the two charging order creditors to discuss the appropriate process to proceed toward mediation and/or arbitration.

Barnstormer LLC has an interest in the action. Plaintiffs seek to have this Court order that funds held in escrow by counsel for Barnstormer LLC be distributed even though Barnstormer LLC has not as yet initiated the mandatory mediation/arbitration provisions required under the Operating Agreement. Defendants seek to have Barnstormer LLC immediately pay $626,248.50 to Defendants on the theory that Defendant has a distributional interest, whereas Barnstormer LLC believes those funds should only be distributed to the charging order creditors if Defendant has a distributional interest. For clarification, Barnstormer LLC will pay any distributional interest of the Defendant to the appropriate charging order

creditor(s) once the dispute (as to whether there is a distributional interest) is resolved through the procedures required in the Barnstormer LLC Operating Agreement. Counsel for Barnstormer LLC has previously advised counsel for both charging order creditors that those funds will remain in escrow until there is a final decision on whether Defendant has a distributional interest. If it is agreed (at mediation) or determined (by an arbitrator) that Defendant has no (or a reduced) distributional interest, those funds will be apportioned consistent with the Operating Agreement.

Barnstormer LLC's interest will certainly be affected by the relief Plaintiffs request from this Court. Barnstormer LLC is acting in the interest of each of its members that made a cash investment in Barnstormer LLC. None of those members should have their capital account or distributional interest diluted by a unilateral statement by the Defendant made after all others had invested. The Barnstormer LLC records (maintained by HIREHCO which was completely controlled by the Defendant) do not document or support a $2,000,000 capital account for Defendant. Again, if it is ultimately agreed at mediation or ruled at arbitration that Defendant has a distributional interest, then Barnstormer will distribute those funds to the appropriate charging order creditor(s) as agreed or ordered.[2] However, it is uncontestable that Barnstormer LLC's interest and the interests of its members would be affected by the relief requested.

None of the current parties to this action will protect the interest of Barnstormer LLC. There is one pot of money. Both charging order creditors believe they are entitled to all or a portion of that money. Defendant has no interest in protecting Barnstormer LLC's interest. First, to the extent funds are paid to charging order creditors (instead of being distributed to cash investors in Barnstormer LLC), Defendant's personal liability to Plaintiffs and Mr. Solaz would

---

[2] Barnstormer LLC also has set off rights and subordination/subrogation claims against any distributional interest of Defendant. Those rights will also be determined in the mediation/arbitration. Barnstormer LLC believes those claims will have priority over any claims by the charging order creditors either at law or in equity. *OCI Mortgage Corp. v. Marchese*, 255 Conn. 448, 463-64 (2001).

be reduced. Second, Defendant never appeared in either underlying action brought by the charging order creditors, and it is possible that he may "default" and not respond to the show cause order. Third, Defendant is fully aware that there is no possibility of him receiving any funds from this action, as the amount of the charging orders exceed the maximum amount he could possibly be entitled to receive from the sale of the Lift under any circumstances.

> **II. If Barnstormer LLC is Joined as a Party, the Court Cannot Exercise Supplemental Jurisdiction over the Dispute Relating to Whether Defendant James Barnes has a Distributional Interest.**

While 28 U.S.C. § 1367(a) allows a district court that has original jurisdiction to exercise supplemental jurisdiction over certain claims, that ability is limited by subsection (b) of that section, which provides:

> (b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this tile, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

As noted above, a dispute exists between Plaintiffs and Barnstormer LLC over the amount or even the existence of a distributional interest of Defendant. Accordingly, the claim by the Plaintiffs that Barnstormer LLC pay over the requested amount of $626,248.50 is a claim by the Plaintiffs against an entity seeking party status under F.R.C.P. 24. Therefore, section 1367 prohibits the Court from exercising supplemental jurisdiction over the disputes relating to that claim. Accordingly, in order to retain jurisdiction over the dispute between Plaintiffs and Barnstormer LLC the Court must confirm that there is an independent basis for subject-matter jurisdiction over that dispute.

Plaintiffs are residents of New Jersey, and Barnstormer LLC has at least one member who is a resident of the State of New Jersey. Given that for federal diversity purposes a limited liability company is considered to be a citizen of the state of each of its members (*Bayerische Landesbank, New York Branch v. Aladdin Capital Management LLC*, 692 F.3d 42, 49 (2nd Cir. 2012)), if Barnstormer LLC is joined as a party there would be citizens of New Jersey as both plaintiffs and defendants. The entire case would then need to be dismissed, as "[a] failure of diversity . . . contaminates the action, so to speak, and takes away any jurisdiction for providing a federal forum." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 179 (2d Cir. 2007), *citing Exxon Mobil Corp. v. Allapattah Services, Inc.,* 545 U.S. 546, 562 (2005).

However, as discussed below, both the Federal Rules and case law require further analysis under F.R.C.P. 19 before the Court enters an order of dismissal for lack of subject-matter jurisdiction.

**III.** **Analysis Under F.R.C.P. 19.**

Case law requires a two-step analysis for determining whether an action should be dismissed for lack of diversity upon request for intervention. V*iacom International, Inc. v. Kearny*, 212 F.3d 721 (2d Cir. 2000). The court must first determine "whether the absent party belongs in the suit, *i.e.,* whether the party qualifies as a 'necessary' party under Rule 19(a). *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 124, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968) (" 'Persons having an interest in the controversy, and who ought to be made parties ... are commonly termed necessary parties ....' ") (*quoting Shields v. Barrow*, 58 U.S. (17 How.) 130, 139, 15 L.Ed. 158 (1854))." *Viacom*, 212 F.3d at 724.

Rule 19(a)(1) states that if the party will not deprive the court of subject-matter jurisdiction, the party should be joined if:

(A) in that person's absence, the court cannot accord complete relief among existing parties or that person claims those already parties; or
(B) that person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may
  (i) as a practical matter impair or impede the person's ability to protect that interest or
  (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

This provision of F.R.C.P. 19 codifies the Second Circuit's test for determining whether a party is a "necessary" party. *See Viacom*, 212 F.3d at 724-25.

If the court determines that a party is "necessary," it must then determine whether the case can or should continue pursuant to the provisions of F.R.C.P. 19(b)[3]:

(b) WHEN JOINDER IS NOT FEASIBLE. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
  (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
  (2) the extent to which any prejudice could be lessened or avoided by:
    (A) protective provisions in the judgment;
    (B) shaping the relief; or
    (C) other measures;
  (3) whether a judgment rendered in the person's absence would be adequate; and
  (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Rule 19(b) allows a court to fashion and limit remedies and orders, consistent with equity and good conscience and the four factors, to permit a case to proceed with the existing parties. *See Provident Tradesmens Bank & Trust Company v. Patterson*, 390 U.S. 102, 111-12 (1968) ("Rule 19(b) also directs a district court to consider the possibility of shaping relief to

---

[3] Prior to its amendment in 2007, F.R.C.P. 19(b) included the word "indispensable," but that word was omitted as being redundant and merely expressing the conclusion of application of the tests of Rule 19(b). See Advisory Committee Notes to the 2007 amendment. The phrase "indispensable party" was used in *Viacom* to reflect the conclusion of those Rule 19(b) tests. *See Viacom, supra,* 212 F.3d at 725.

accommodate these four interests."). For example, in *B. Fernandez Hnos, Inc., v. Kellogg USA, Inc.*, 440 F.3d 541 (1st Cir. 2006), Kellogg Caribbean Services, Inc. appealed a denial of its motion to intervene in a suit where plaintiffs sought damages, declaratory relief and an injunction. The First Circuit recognized Kellogg Caribbean's right to intervene and noted that joining it as a party would require dismissal of the case for lack of diversity subject-matter jurisdiction. However, the First Circuit remanded, directing the district court to weigh the Rule 19(b) factors, including consideration of whether the case should proceed without Kellogg Caribbean by limiting the relief available. *Kellogg*, 440 F.3d at 548.

Similarly, the Second Circuit has held that a district court may use Rule 19(b) to allow a plaintiff to amend its complaint to limit its requested relief and thus eliminate the need to name an otherwise "necessary" party that would destroy diversity. *See Jaser v. New York Property Insurance Underwriting Association,* 815 F.2d 240, 243 (2d Cir. 1987).

### IV. **Barnstormer LLC is a Necessary Party under F.R.C.P. 19(a)(1)(B).**

An absent party is a "necessary party" if the party claims an interest relating to the subject of the action and the party's absence may impair or impede the party's ability to protect that interest. F.R.C.P. 19(a)(1)(B)[4].

The subject of the instant action is whether Defendant James Barnes has any distributional interest in Barnstormer LLC. Plaintiffs claim that they are entitled to receive $626,248.50 and that Barnstormer LLC should pay that amount to them. Barnstormer LLC disputes the amount of Defendant James Barnes's distributional interest and contends that he is not entitled to any distributional interest. If this Court rules that Barnstormer must turn over those funds before there is a determination as to whether Defendant actually has a distributional

---

[4] The Rule 19(A)(1)(B) standard is similar to the Rule 24(a) standard.

interest, then Barnstormer LLC will have no ability to protect its interest. Further, none of the existing parties to the case will adequately protect Barnstormer LLC's interest: Plaintiffs want the full $626,248.50 and Dan Solaz wants the full amount of his charging order. To make either payment there must be a decision that Defendant has a distributional interest. Defendant Barnes (if he appears) will likely support payment of the full $626,248.50 to the charging order creditor(a) as it will reduce his individual liability.

Accordingly, Barnstormer LLC has an interest in the subject of the action and its absence would impede its ability to protect that interest.

### V. The Mandatory Mediation and Arbitration Provisions of the Barnstormer LLC Operating Agreement Should be Enforced.

"When parties have a valid arbitration agreement, 'the courts are empowered to direct compliance with its provisions.'" *MSL, LLC v. DeSimone,* 313 Conn. 54, 63 (2014), *quoting Gores v. Rosenthal,* 150 Conn. 554, 557 (1963). Courts will enforce arbitration agreements in limited liability company operating agreements that require "disputes arising out of or relating to" the operating agreement. *SLSJ, LLC v. Kleban*, 2015 WL 1973307 (April 20, 2015, U.S. Dist. Ct., Conn.). Doubts concerning the scope of arbitration should be resolved in favor of arbitration provided the parties to the arbitration have consented to the arbitration. *Applied Enterprises, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522, 525 (2d Cir. 2011). As demonstrated by the signature page included in Exhibit 1, Defendant signed the Operating Agreement and consented to the mediation/arbitration provisions.

No party has or could make an argument that the mediation/arbitration provisions are unenforceable. The sole objection is that neither Plaintiffs nor Mr. Solaz are *required* to participate in mediation or arbitration. Barnstormer LLC has informed both Plaintiffs and Mr.

Solaz that they are welcome to participate in mediation and arbitration, and in fashioning the procedures for arbitration. Accordingly, their rights as the true parties in interest to any distributional interest would be protected in mediation and arbitration.

Continuing to litigate this issue in this proceeding or allowing Plaintiffs to challenge the substance of any decision by the arbitrator would, however, raise the risk of the type of double or inconsistent results that are cautioned against in Rule 19(a)(1)(B)(ii). Accordingly, this Court should issue an order enforcing the mediation/arbitration provisions of the Barnstormer LLC Operating Agreement. This would also allow the Court to retain jurisdiction over the issue of the relative priorities of the charging orders, as outlined below.

**VI.    The Court Should Enforce the Mediation/Arbitration Provisions of the Operating Agreement and Limit the Remedies Under Rule 19(b) and Allow the Action to Proceed Among the Existing Parties.**

The Supreme Court has identified four "interests" inherent in Rule 19(b) that must be examined in each case to determine whether, in equity and good conscience, a court should proceed without a party whose absence from the litigation is otherwise compelled by Rule 19(a):

> First, the plaintiff has an interest in having a forum. Before the trial, the strength of this interest obviously depends upon whether a satisfactory alternative forum exists. . . . Second, the defendant may properly wish to avoid multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another. . . . Third, there is the interest of the outsider whom it would have been desirable to join. . . . Fourth, there remains the interest of the courts and the public in complete, consistent, and efficient settlement of controversies.

*Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110-11 (1968).

The *Provident Tradesmen* Court also held that Rule 19(b) "directs a district court to consider the possibility of shaping relief to accommodate these four interests." *Id*., 102 U.S. at 111. The instant case presents a textbook example of how relief can be shaped and subject-matter jurisdiction retained while meeting all four interests.

The Plaintiffs need a forum to resolve their three issues – which charging creditor has priority, what is Defendant's distributional interest, and will Barnstormer pay over the distributional interest. The Barnstormer LLC Operating Agreement requires mediation and arbitration. If this Court issues an order enforcing the mediation/arbitration provisions, the Court may retain jurisdiction over the relative priority issue and Plaintiffs will be able to protect their interest in determining the amount of Defendant's distributional interest in the arbitration proceeding.

Enforcing the mediation/arbitration provisions will also prevent Barnstormer LLC from being subject to multiple litigation or inconsistent relief. That risk would arise from either charging order creditor substantively challenging any arbitrator's ruling (of necessity in a state court action), with the possibility of conflicting results. The risk is prevented by compelling arbitration and allowing the charging order creditors to participate. At least one court has held that Rule 19(b)(2) allows a court to include "protective provisions" making minor changes to mandatory arbitration provisions. *Local 670, United Rubber, Cork, Linoleum, and Plastic Workers of America, AFL-CIO v. International Union, United Rubber, Cork, Linoleum, and Plastic Workers of America, AFL-CIO*, 821 F.22 614,622 (6th Cir. 1987). Barnstormer LLC would not object to an order granting Plaintiffs and Mr. Solaz full rights to participate in both the mediation and arbitration required by the Operating Agreement.

In addition, Barnstormer LLC (the "outsider" under the Supreme Court's third "interest") has an undeniable interest in the issue of whether Defendant has a distributional interest. Each of the other members of Barnstormer LLC (with the exception of one member who allegedly received a "transfer" of part of Defendant's capital account) invested cash. There is no record of Defendant investing cash in or providing services to Barnstormer LLC that justify his alleged

14

$2,000,000.00 capital account. Those members have an interest in not having their investments fraudulently diluted, and the new managers (who are also members) have a fiduciary duty to those members to ensure that distributions reflect actual capital accounts.[5]

Fourth, enforcing mediation and arbitration provisions in contracts supports the interest of the courts and the public in complete, consistent, and efficient settlement of controversies:

> "[O]ur courts have wholeheartedly endorsed arbitration as an effective alternative method of settling disputes intended to avoid the formalities, delay, expense and vexation of ordinary litigation." (Internal quotation marks omitted.) *Metropolitan District Commission v. AFSCME, Council 4, Local 184*, 237 Conn. 114, 118, 676 A.2d 825 (1996); *see also AFSCME, Council 4, Local 704 v. Dept. of Public Health*, 272 Conn. 617, 626 (2005), 866 A.2d 582 (noting "the strong public policy favoring arbitration"); *Nussbaum v. Kimberly Timbers, Ltd.*, 271 Conn. 65, 71, 856 A.2d 364 (2004) ("Connecticut has adopted a clear public policy in favor of arbitrating disputes"); *L & R Realty v. Connecticut National Bank*, 246 Conn. 1, 12, 715 A.2d 748 (1998) ("[a]rbitration agreements illustrate the strong public policy favoring freedom of contract and the efficient resolution of disputes"); *Waterbury Teachers Assn. v. Waterbury*, 164 Conn. 426, 434, 324 A.2d 267 (1973) ("arbitration is a favored procedure in this state").
>
> *MSO, LLC v. DeSimone*, 313 Conn. 54, 63 (2014).

Accordingly, Barnstormer LLC requests that the Court enter an order compelling mediation and arbitration as provided by the Barnstormer LLC Operating Agreement and limit

---

[5] That fiduciary obligation includes ensuring that consideration is paid for a capital account. Section 34-255b(b) of the Connecticut Limited Liability Act provides that "[i]f a person does not fulfill an obligation to make a contribution other than money, the person is obligated at the option of the limited liability company to contribute money equal to the value of the part of the contribution which has not been made." As there is no record of Defendant contributing cash, no record of what alternative consideration supports his capital account, and no accounting of any such alternative consideration, Barnstormer LLC believes it is entitled to require contribution of money which, if not paid, becomes an offset right that would eliminate any right of Defendant to a distributional interest.

the scope of the instant proceeding to the issue of the relative priorities of the two charging orders, or in the alternative, to allow Barnstormer LLC to intervene as a matter of right.

Dated at Bridgeport, Connecticut this 7th day of August, 2020.

INTERVENOR

BARNSORMER SUMMIT LIFT, LLC

By:   /s/ *Aaron A. Romney*\_\_ \_\_\_
Aaron A. Romney (ct28144)
Christopher H. Blau (ct30120)
Zeisler & Zeisler, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
(203) 368-4234
aromney@zeislaw.com
cblau@zeislaw.com

By:   /s/ *David N. Dunn*_____
David N. Dunn
*Pro hac admission pending*
Phillips, Dunn, Shriver & Carroll, P.C.
147 Western Avernue
Brattleboro, VT 05301
(802) 257-7244 (ext. 112)
ddunn@pdsclaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2020, a copy of the foregoing Motion was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system and via certified mail to all counsel and pro-se parties as listed below:

Defendant:
James R. Barnes
145 Deercliff Road
Avon, CT 06001

Doug Skalka, Esq.
195 Church Street 13th Floor
New Haven, CT 06510
*Counsel to James R. Barnes*

Janice B. Grubin
Barclay Damon LLP
1270 Avenue of the Americas
Suite 501
New York, NY 10020
*Counsel to James R. Barnes*

William E. Whittington
Whittington Law Associates
35 S. Main Street
Hanover, NH 03755
*Counsel to James R. Barnes*

Kevin J. McEleney
Updike, Kelly & Spellacy, P.C.
100 Pearl Street, PO Box 231277
Hartford, CT 06123
*Counsel for Plaintiffs*

Garrett S. Flynn, Esq.
Law Offices of Garrett S. Flynn, LLC
10 North Main Street, Suite 221
West Hartford, CT 06107-1941
*Counsel to Dan Solaz*

                                                  /s/ *Aaron A. Romney*
                                                 Aaron A. Romney (ct28144)